# No. 23-2125

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

ALLAN KUSTOK,
PETITIONER-APPELLANT,

*V.*

DAVID MITCHELL,
RESPONDENT-APPELLEE.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS, EASTERN DIVISION

CASE NO. 1:21-cv-06932
The Honorable Matthew F. Kennelly, District Court Judge

_____

## REPLY BRIEF OF
## PETITIONER-APPELLANT ALLAN KUSTOK

_____

Karl Leonard, *Counsel of record*
Debra Loevy
THE EXONERATION PROJECT
  at University of Chicago Law School
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 789-4955
karl@exonerationproject.org
debra@exonerationproject.org

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................i

STATEMENT OF THE CASE................................................................................1

ARGUMENT ..........................................................................................................2

    I.    Kustok's Claim is Not Procedurally Barred Because the Rule the State
    Courts Relied on Was Not Firmly Established at the Time of Kustok's
    Appeals and is Therefore Not an Adequate State Law Ground
    for Dismissing the Claim ....................................................................................2

        A.  How to Assess the Adequacy of the State's Procedural Ruling ..............2

        B.  The State Courts' Forfeiture Rules Were Not Firmly Established
        and Regularly Followed at the Time of the Alleged Forfeiture,
        Kustok's 2016 Direct Appeal...................................................................4

    II.   Should the Court Disagree and Find an Adequate Procedural Bar, the Cause
    and Prejudice Test Requires Consideration of Mr. Kustok's Claim....................9

        A.  Kustok Has Sufficiently Demonstrated Cause for Any Lapse................9

        B.  Kustok Has Also Sufficiently Shown Prejudice from Not Being
        Able to Present His Ineffective Assistance of Counsel Claim................11

            1.  Deficient Performance Under *Strickland*...........................................12

            2.  Counsel's Lapse Was Prejudicial Under *Strickland* .........................14

CONCLUSION......................................................................................................21

# TABLE OF AUTHORITIES

*Beard v. Kindler*, 558 U.S. 53 (2009) ...........................................................................3

*Clemons v. Pfister*, 845 F.3d 816 (7th Cir. 2017) ...........................................................3

*Crockett v. Butler*, 807 F.3d 160 (7th Cir. 2015) ........................................................2, 3

*Crutchfield v. Dennison*, 910 F.3d 968 (7th Cir. 2018) ...............................................8, 9

*Donelson v. Pfister*, 811 F.3d 911 (7th Cir. 2016) ...........................................................4

*Douglas v. Alabama*, 380 U.S. 415 (1965) .......................................................................2

*Dunn v. Jess*, 981 F.3d 582 (7th Cir. 2020) ...................................................................19

*Dunn v. Neal*, 44 F.4th 696 (7th Cir. 2022) ........................................................14, 19, 20

*Ford v. Georgia*, 498 U.S. 411 (1991) .............................................................................4

*Franklin v. Warden*, No. 05-CV-0304, 2014 WL 7433752 (E.D. Cal. Dec. 31, 2014)................16

*Franklin v. Kernan*, 646 Fed. Appx. 663 (9th Cir. 2016) ...............................................16

*In re Logan F.*, 2017 IL App (4th) 160695-U ...................................................................6

*Johnson v. Lee*, 578 U.S. 605 (2016) .............................................................................2, 8

*Johnson v. Mississippi*, 486 U.S. 578 (1988) ..................................................................3

*Kaczmarek v. Rednour*, 627 F.3d 586 (7th Cir. 2010) ...................................................3, 4

*Kustok*, 2016 IL App (1st) 143812-U .............................................................................12

*Kustok*, 2021 IL App 191899-U.................................................................................1, 13

*Lee v. Foster*, 750 F.3d 687 (7th Cir. 2014) ..................................................................3, 8

*Lee v. Kemna*, 534 U.S. 362 (2002)..............................................................................2, 3

*Mager v. Dept. of State Police*, 460 Mich. 134 (1999)..................................................16

*Martinez v. Ryan*, 566 U.S. 1 (2012) .............................................................................10

*Massaro v. United States*, 538 U.S. 500 (2003) ..............................................................5

i

*Mata v. Baker*, 74 F.4th 480 (7th Cir. 2023)..................................................................8

*McMullen v. Dalton*, 83 F.4th 480 (7th Cir. 2023) .......................................................20

*Murray v. Carrier*, 477 U.S. 478 (1986).......................................................................10

*Omnicare, Inc. v. Unitedhealth Group, Inc.*, 524 F. Supp. 2d 1031 (N.D. Ill. 2007)....................13

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ........................13

*People v. Austin*, 2017 IL App (4th) 141013-U ................................................................6

*People v. Bew*, 228 Ill.2d 122 (2008)............................................................................5

*People v. Boling*, 2017 IL App (4th) 150076-U ...............................................................6

*People v. Clark*, 406 Ill. App. 3d 622 (2010) .................................................................5

*People v. Cline*, 2016 IL App (4th) 140379-U .................................................................6

*People v. Crutchfield*, 379 Ill. App. 3d 1090 (4th Dist. 2008)...........................................8

*People v. Fellers*, 2016 IL App (4th) 140486 ..................................................................6

*People v. Fenton*, 2017 IL App (5th) 140052-U ...............................................................6

*People v. Hansbrough*, 2016 IL App (4th) 141032-U .....................................................6, 7

*People v. Heller*, 2017 IL App (4th) 140658 .................................................................6, 7

*People v. Johnson*, 2016 IL App (4th) 150004 .................................................................6

*People v. Kirklin*, 2015 IL App (1st) 131420 ..................................................................5

*People v. Kunze*, 193 Ill. App. 3d 708 (1990)................................................................5, 8

*People v. Parker*, 344 Ill. App.3d 728 (2003) .................................................................5

*People v. Reyes*, 2016 IL App (1st) 150148-U .................................................................6

*People v. Rice*, 2017 IL App (4th) 141081-U ..................................................................7

*People v. Smith*, 2016 IL App (5th) 140060-U .................................................................6

*People v. Sparks*, 2016 IL App (5th) 130229-U ...............................................................6

*People v. Stillwell*, 2016 IL App (4th) 140753-U ...............................................................6

*People v. Tosh*, 2017 IL App (4th) 150067-U ...................................................................6

*People v. Veach*, 2016 IL App (4th) 130888 ...................................................5, 6, 7, 9, 10, 11, 21

*People v. Veach*, 2017 IL 120649 .........................................4, 5, 6, 7, 8, 9, 10, 11, 21

*People v. Wasson*, 2017 IL App (4th) 150095-U .........................................................6

*People v. Whitehead*, 662 N.E.2d 1304 (1996) ......................................................7, 8

*People v. Wilson*, 2016 IL App (4th) 140808-U ..........................................................6

*Prihoda v. McCaughtry*, 910 F.2d 1379 (7th Cir. 1990) ............................................3

*Promotor v. Pollard*, 628 F.3d 878 (7th Cir. 2010) ...................................................8

*Reed v. Ross*, 468 U.S. 1 (1984) ........................................................................9, 10

*Richardson v. Briley*, 401 F.3d 794 (7th Cir. 2005) ................................................11

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................12, 14

*Sturgeon v. Chandler*, 552 F.3d 604 (7th Cir. 2009) .................................................7

*Thompson v. Brown*, 901 F.3d 851 (7th Cir. 2018) .................................................3, 4

*Trevino v. Thaler*, 569 U.S. 413 (2013) ............................................................10, 11

*United States v. Crawley*, 837 F.2d 291 (7th Cir. 1988) ...........................................13

*United States v. Frady*, 456 U.S. 152 (1982) .........................................................11

*Village of Palatine v. U.S. Postal Serv.*, 756 F. Supp. 1079 (N.D. Ill. 1991) ...............10

*Villanueva v. Anglin*, 719 F.3d 769 (7th Cir. 2013) .................................................4, 8

*Washington v. Smith*, 219 F.3d 620 (7th Cir. 2000) .................................................14

*White v. Bowersox*, 206 F.3d 776 (8th Cir. 2000) ...................................................3, 4

**STATEMENT OF THE CASE**

The district court believed that it was not permitted to adjudicate the merits of *habeas* petitioner Alan Kustok's ineffective assistance of counsel claim due to the state court's finding of forfeiture, although the court made express findings recognizing the obvious potential merit of the underlying claim. Indeed, the district court found that the new sodium rhodizonate testing ("SR testing"), omitted before trial and at issue in the ineffective assistance claim, would have been powerful evidence severely impeaching both the State's key expert, Rod Englert, and the State's theory of the case. A.17-20; *see e.g., id.* at 19 ("The significance of the SR Test results therefore involves not simply 'the presence or lack of lead on the pillowcase,' *Kustok*, 2021 IL App 191899-U, ¶ 55, but also the prosecution expert's knowing refusal to use what he conceded was the appropriate test."); *id.* ("Although the jury learned on cross-examination of Englert's failure to follow proper testing procedures, without the test results it could not have known that this flawed approach led to Englert being wrong on this material factual issue"); *id.* at 20 ("test results would have established that Englert's reconstruction was inconsistent with the physical evidence, while also corroborating defense expert Kish's testimony").

But the district court held that the state court finding that Kustok had forfeited his ineffective assistance of counsel claim procedurally barred the court from considering this potentially meritorious claim on *habeas* and that the miscarriage of justice exception did not apply. A.13-14. It is those procedural rulings that Kustok appeals here. Nevertheless, Respondent dedicates his statement of the case to smearing Kustok and trying to prove his guilt, even though guilt or innocence is not at issue in this appeal. Although Kustok has adamantly maintained his innocence since day one, this effort to litigate culpability is an irrelevant distraction. As such,

Kustok will only correct Respondent's rendition of the facts as it relates to the legal issues and

trusts that the Court will not be swayed by the impermissible efforts to tarnish him.[1]

## ARGUMENT

**I.**     **Kustok's Claim is Not Procedurally Barred Because the Rule the State Courts Relied on Was Not Firmly Established at the Time of Kustok's Appeals and is Therefore Not an Adequate State Law Ground for Dismissing the Claim**

### A. How to Assess the Adequacy of the State's Procedural Ruling

It is this Court, not the state courts, that decides whether the state courts' rejection of

Kustok's ineffective assistance of counsel claim on procedural grounds was an independent and

adequate basis for barring the claim as forfeited. *See, e.g.*, *Johnson v. Lee*, 578 U.S. 605, 608

(2016) ("what makes a state procedural bar 'adequate'…. is a matter of federal law."); *Lee v.*

*Kemna*, 534 U.S. 362, 375 (2002) ("'[T]he adequacy of state procedural bars to the assertion of

federal questions,' we have recognized, is not within the State's prerogative finally to decide;

rather, adequacy 'is itself a federal question.'") (quoting *Douglas v. Alabama*, 380 U.S. 415, 422

(1965)); *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) ("Whether a state procedural

ruling is 'adequate' is a question of federal law.") (citing *Lee* and *Crockett*).

To be clear, in assessing the adequacy of the state procedural ruling, it is not for this

Court to examine the merits of the state courts' application of their procedural rules. *Crockett v.*

*Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (citation omitted). Instead, the task for this Court is

twofold. First, it must determine whether the forfeiture rule invoked below was "firmly

---

[1] Similarly, Respondent argues at length that "Petitioner cannot establish his actual innocence." Doc.19 at 25-32. Again, Petitioner maintains his innocence, but he did not raise a legal claim of actual innocence, which Respondent is forced to acknowledge. Doc.19 at 25 ("Petitioner makes no argument that new evidence so conclusively establishes his actual innocence that his default may be excused under the exception for fundamental miscarriages of justices."). Nevertheless, Respondent erects and attempts to defeat this strawman. The Court should ignore Respondent's transparent effort to sully Kustok.

established and regularly followed." *Crockett*, 807 F.3d at 167 (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009), and *Lee,* 534 U.S. at 376); *see also Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014) (this Court reviews the adequacy of a state procedural rejection of a claim by asking "whether it is a firmly established and regularly followed state practice at the time it is applied[.]"). And second, as a corollary to these requirements, the Court makes sure that the state procedural bar has not been applied in a manner that "impose[s] novel and unforeseeable requirements without fair or substantial support in prior state law[.]" *Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017). Accordingly, where the invoked procedural rule has been applied "infrequently, unexpectedly, or freakishly," it may not be adequate, for "the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Crockett*, 807 F.3d at 167 (quoting *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990)); *see also Johnson v. Mississippi*, 486 U.S. 578, 587-89 (1988).

This Court's ruling in *Thompson v. Brown*, 901 F.3d 851, 854 (7th Cir. 2018), is illustrative. In *Thompson*, the Indiana appellate court extended its prior applications of the doctrine of *laches* to rule that *laches* barred the petitioner's post-conviction petition and dismiss his claims on that basis. *Id.* This court held that the "state appeal may have been a reasonable extension of the laches doctrine," but despite the correctness of the state court ruling, the court's approach was novel and "did not reflect 'a firmly established and regularly followed state practice at the time it [was] applied.'" *Id.* (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). This Court quoted *White v. Bowersox*, 206 F.3d 776, 781 (8th Cir. 2000), for the proposition that "[e]ven though a rule appears in retrospect to form part of a consistent pattern of procedures, it should not be applied as a procedural default if the defendant could not be deemed to have been apprised of its existence." *Id*. In other words, novel interpretations of the law are

not an adequate basis for denying consideration of whether a federal right was violated. *See also*, *e.g.*, *Donelson v. Pfister*, 811 F.3d 911, 917 (7th Cir. 2016) ("The procedural rule adopted and enforced by the state court could not support a defense of procedural default against Donelson unless that rule was already established….Aberrant state procedural rulings are not adequate to foreclose federal review under § 2254.") (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Villanueva v. Anglin*, 719 F.3d 769, 776-77 (7th Cir. 2013) (the Illinois Supreme Court's labeling of a new procedural rule as one without retroactive application did not present an adequate state procedural basis for preventing federal *habeas* review of petitioners' claims, despite the contrary state court finding).

Respondent sidesteps this issue by assuming that forfeiture is always an independent and adequate state ground. Doc.19 at 19-20. But this oversimplification fails to recognize that each circumstance of forfeiture is different, and while some forfeiture rulings are based on "firmly established and regularly followed" law, others—as in *Thompson*, *White*, *Donelson*, and *Villanueva*—may be grounded on an inadequate basis. Thus, Respondent's citation to *Kaczmarek*, 627 F.3d at 592, to argue that forfeiture is generally an independent and adequate state ground is unavailing. Doc.19 at 19. In that case, "Kaczmarek [did] not argue that the waiver rule is not an adequate ground for the Illinois Supreme Court's decision not to reach the merits of his [ ] claim." *Kaczmarek*, 627 F.3d at 592. Thus, the question before this Court—was the state courts' forfeiture ruling an adequate basis for denying consideration of the violation of a federal constitutional right—was not at issue in *Kaczmarek*. *Id.*

### B. The State Courts' Forfeiture Rules Were Not Firmly Established and Regularly Followed at the Time of the Alleged Forfeiture, Kustok's 2016 Direct Appeal

In the Illinois Supreme Court's opinion in *People v. Veach*, 2017 IL 120649 ("*Veach II*"), the court expressly acknowledged that prior to its 2017 decision, Illinois appellate courts

categorically refused to hear most claims of ineffective assistance of counsel on direct appeal. *Id.* at ¶¶ 31-39. First, the *Veach II* court recognized that the practice of deferring ineffective assistance of counsel claims until post-conviction was well-established in cases "such as *People v. Kunze*, 193 Ill. App. 3d 708 (1990); *People v. Kirklin*, 2015 IL App (1st) 131420; *People v. Clark*, 406 Ill. App. 3d 622 (2010); and *People v. Parker*, 344 Ill. App.3d 728 (2003)." *Veach*, 2017 IL 120649, at ¶ 31 (cites cleaned up). The *Veach II* court also acknowledged that the 2016 appellate court decision below ("*Veach I*") articulated the court's "belie[f] that *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), and *People v. Bew*, 228 Ill.2d 122, 319 Ill. Dec. 878, 886 N.E.2d 1002 (2008), implied that waiting for collateral review of matters of ineffective assistance was 'almost always' preferable." *Veach*, 2017 IL 120649, at ¶ 31 (citing 2016 IL App (4th) 130888, ¶¶ 69-70).

Second, the *Veach II* supreme court discussed the three categories delineated in *Veach I* that the appellate courts had used between *Veach I* and *Veach II*, for addressing ineffective assistance of counsel claims raised on direct appeal. During that timeframe, there were the "rare occasion" direct appeals "raising ineffective assistance of counsel that the appellate court may address because they are clearly groundless" and the trial court record would not matter in such a case "because the defendant's claim has no merit." *Veach II*, 2017 IL 120649, ¶ 33 (quoting *Veach I*, 2016 IL App (4th) 130888, ¶¶ 72, 82). There were also "rare occasion" direct appeals "raising ineffective assistance of counsel that an appellate court may address because trial counsel's errors were so egregious." *Veach II*, 2017 IL 120649, at ¶ 34 (quoting *Veach I*, 2016 IL App (4th) 130888, ¶¶ 72, 85). And the remainder of ineffective assistance claims fell into a category that, on direct appeal, "the appellate court should decline to address." *Veach II*, 2017 IL 120649, at ¶ 32 (quoting *Veach I*, 2016 IL App (4th) 130888, ¶ 72).

Finally, the *Veach II* court observed that, for example, in between the appellate court's articulation of the three categories for ineffective assistance of counsel claims (March 11, 2016) and the supreme court's ruling (May 18, 2017), the appellate courts repeatedly applied the three-part classification of ineffective assistance of counsel claims. *Veach II*, 2017 IL 120649, ¶ 37 (citing *People v. Heller*, 2017 IL App (4th) 140658, 410 Ill.Dec. 834, 71 N.E.3d 1113; *People v. Austin*, 2017 IL App (4th) 141013-U, 2017 WL 531391; *In re Logan F.*, 2017 IL App (4th) 160695-U, 2017 WL 888376; *People v. Fenton*, 2017 IL App (5th) 140052-U, 2017 WL 1018294; *People v. Johnson*, 2016 IL App (4th) 150004, 403 Ill.Dec. 845, 55 N.E.3d 32; *People v. Fellers*, 2016 IL App (4th) 140486, 413 Ill.Dec. 187, 77 N.E.3d 994; *People v. Cline*, 2016 IL App (4th) 140379-U, 2016 WL 3030943; *People v. Sparks*, 2016 IL App (5th) 130229-U, 2016 WL 4079425; *373  *People v. Reyes*, 2016 IL App (1st) 150148-U, 2016 WL 4586328; *People v. Smith*, 2016 IL App (5th) 140060-U, 2016 WL 4723844; *People v. Wilson*, 2016 IL App (4th) 140808-U, 2016 WL 6584354; *People v. Stillwell*, 2016 IL App (4th) 140753-U, 2016 WL 6585336; *People v. Hansbrough*, 2016 IL App (4th) 141032-U, 2016 WL 7118858)). *See also People v. Tosh*, 2017 IL App (4th) 150067-U, ¶¶ 41-42 (relying on *Veach I* categorization to decline to hear ineffective assistance claim on direct appeal); *People v. Boling*, 2017 IL App (4th) 150076-U, ¶¶ 110-11 (same); *People v. Wasson*, 2017 IL App (4th) 150095-U, ¶ 35 (applying the *Veach I* categories).

The Illinois Supreme Court in *Veach II*, however, changed the landscape for ineffective assistance of counsel claims by expressly acknowledging and rejecting this appellate court practice. The court held, "[W]e reject the practice of our appellate court in applying a broad-sweeping 'categorical approach' in determining whether to consider ineffective assistance of counsel claims on direct review. Instead, reviewing courts in Illinois should carefully consider

each ineffective assistance of counsel claim on a case-by-case basis." *Veach II*, 2017 IL 120649, at ¶ 48.

Kustok's direct appeal concluded on August 12, 2016—exactly during this narrow window in between *Veach I* in the appellate court (March 2016), articulating and defining the categorical approach that would foreclose his claim on direct appeal, and the Illinois Supreme Court's clarification in *Veach II* (May 2017), which would require him to bring his claim on direct appeal. The cases during that window adhered to the categorical approach delineated in the *Veach I* appellate court case. *See, e.g., Heller*, 2017 IL App (4th) 140658, at ¶ 68, *abrogated by Veach*, 2017 IL 120649, ¶ 68 ("this court recently explained that direct appeals asserting claims of ineffective assistance of counsel fall into one of the three following categories: (1) Category A cases, which we decline to address on direct appeal because the trial record does not contain the facts necessary to decide the issue; (2) Category B cases, which we address on direct appeal because the claim of ineffective assistance is clearly groundless; and (3) Category C cases, which we address on direct appeal because trial counsel's errors were so egregious. We conclude that this case falls into Category A."); *People v. Rice*, 2017 IL App (4th) 141081-U, ¶ 2 ("In May 2017, ….citing *People v. Veach*, 2016 IL App (4th) 130888…. We explained that defendant's ineffective-assistance-of-counsel claim would be better addressed in a postconviction proceeding."); *Hansbrough*, 2018 IL App (4th) 141032-B, at ¶ 13 ("In determining whether defendant's claim of ineffective assistance of counsel should be addressed on direct appeal, we applied this court's reasoning in *People v. Veach*, 2016 IL App (4th) 130888, 50 N.E.3d 87 (*Veach I*), which was later reversed by the supreme court in *Veach II*, 2017 IL 120649.").

Thus, cases from a decade-plus earlier, like *Sturgeon v. Chandler*, 552 F.3d 604 (7th Cir. 2009) (Doc.19 at 19), and *People v. Whitehead*, 662 N.E.2d 1304, 1314 (Ill. 1996) (discussing

forfeiture generally) (Doc.19 at 23), or even this Court's recent ruling in *Mata v. Baker*, 74 F.4th 480 (7th Cir. 2023), do not address the fact that in 2016-17, there was an inconsistency and confusion in the state of the law on this precise issue—expressly acknowledged by the Illinois Supreme Court in *Veach II*—that rendered the procedural bar imposed a moving target and therefore legally inadequate. This was not the required employment of a "firmly established and regularly followed" application of the law. *Johnson*, 578 U.S. at 606; *see also Lee*, 750 F.3d at 694; *Villanueva*, 719 F.3d at 776-77. Nor was it application of a procedural rule in a "consistent and principled way." *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010).

Like the district court's, Respondent's reliance on *Crutchfield v. Dennison*, 910 F.3d 968, 976 (7th Cir. 2018), is misplaced. Doc.19 at 21-22. *Crutchfield* involved a 2008 direct appeal that failed to raise the ineffective assistance of counsel claim. *People v. Crutchfield*, 379 Ill. App. 3d 1090, 957 N.E.2d 595 (4th Dist. 2008). By the time the petitioner in that case raised his claim on his *second* post-conviction petition, he had to concede that he had forfeited the issue for failing to raise it in his first petition. *Crutchfield*, 910 F.3d at 971.

The *Crutchfield* decision was entered after *Veach II*, and the Court's discussion therein of state law expressly acknowledged the prior ambiguities before *Veach II. See Crutchfield*, 910 F.3d at 976-77 (acknowledging that, before *Veach II¸* the Illinois Appellate Court had previously held that "[a]n adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney client privilege no longer applies.") (quoting *People v. Kunze*, 193 Ill. App. 3d 708 (1990)). The *Crutchfield* Court then observed that *Veach II* now clarifies that if "the claim relies solely on the existing record, it *must* be brought on direct appeal." *Crutchfield*, 910 F.3d at 976 (citing *Veach II*, emphasis in original). Accordingly, the Court concluded that, at the time of its

ruling, "Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial counsel on direct review." *Crutchfield*, 910 F.3d at 978.

This analysis is consistent with Kustok's position here: there have been moments of clarity on the procedural bar, both before and after *Veach II*. But the period between *Veach I* and *Veach II*—when Kustok's direct appeal was being litigated—was a time of unique confusion in the law, precluding a finding that the procedural rule imposed against him during that time-period was firmly established, regularly followed, and therefore adequate. Accordingly, dismissal of Kustok's petition was erroneous, and this Court should reverse the dismissal of his *habeas* petition and remand this case for consideration of Kustok's underlying claim of ineffective assistance of counsel. The state's highest court has recognized that the law was being categorically and erroneously enforced during the relevant time period to prevent ineffective assistance claims from being raised on direct appeal. The procedural bar imposed in this limited context is not adequate.

II.     **Should the Court Disagree and Find an Adequate State Procedural Bar, the Cause and Prejudice Test Requires Consideration of Mr. Kustok's Claim**

A.     **Kustok Has Sufficiently Demonstrated Cause for Any Lapse**

Should this Court find that the state's procedural bar of Kustok's claim is adequate, then the Court should still consider whether Kustok has established both cause excusing any procedural default and prejudice arising from any lapse, supporting consideration of his ineffective assistance of counsel claim. "[T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests." *Reed v. Ross*, 468 U.S. 1, 14 (1984). *See also id.* at 16 ("where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable

state procedures."); *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel").

Here, appellate counsel's lapse in not raising this claim on direct appeal, stranding Kustok between a rock and a hard place, was not attributable to a strategic decision "made in pursuit of his client's interests." *Ross*, 468 U.S. at 14. Instead, counsel was "entitled to rely upon the law as it existed at that time," which during this period between *Veach I* and *Veach II* supported waiting for post-conviction proceedings to raise the ineffective assistance claim. *Vill. of Palatine v. U.S. Postal Serv.*, 756 F. Supp. 1079, 1086 (N.D. Ill. 1991). Counsel's reliance on the law per *Veach I*, before the Illinois Supreme Court's course correction in *Veach II*, put him in good company with the numerous appellate courts that were similarly relying on the categorical approach set forth in *Veach I*. Anticipating *Veach II* was not reasonably available to counsel. Thus, counsel's adherence to *Veach I* satisfies the cause requirement.

Indeed, this case is on all fours with the United States Supreme Court case *Trevino v. Thaler*, 569 U.S. 413, 427 (2013). A narrow exception exists for defaulted claims of trial counsel's ineffectiveness when state law expressly *requires* prisoners to bring these claims on collateral review (*Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012)), or when the state's procedural system effectively deprives prisoners of a meaningful opportunity to litigate the claim on direct appeal (*Trevino*, 569 U.S. 413). In *Trevino*, the Court noted that "Texas courts in effect ha[d] directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than on direct, review." 569 U.S. at 425-26. The effect of this was a "procedural framework, by

reason of its design and operation," that made it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 429. The Supreme Court found that this framework supported excusing the petitioner's procedural default for failing to raise his ineffective assistance claim on direct appeal. *Id.* Indeed, the Court asked, "How could federal law deny defendants the benefit of *Martinez* solely because of the existence of a theoretically available procedural alternative, namely direct appellate review, …which Texas courts so strongly discourage defendants from using?" *Trevino*, 569 U.S. at 427. The same result is required here.

Here, Kustok failed to raise his ineffective assistance claim on direct appeal during the window between *Veach I* and *Veach II*, when the courts strongly discouraged defendants from raising such claims on direct appeal and consistently applied the categorical approach delineated in *Veach I* to defer claims until post-conviction. This is sufficient cause for failing to bring the claim on direct appeal.

**B. Kustok Has Also Sufficiently Shown Prejudice from Not Being Able to Present His Ineffective Assistance of Counsel Claim**

To satisfy the prejudice requirement, should this Court find a procedural default, a petitioner must "prove that any errors worked to his '*actual* and substantial disadvantage.'" *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005), as modified (Aug. 8, 2006) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). Kustok makes a legally sufficient showing by demonstrating that he was deprived of his right to effective assistance of counsel, resulting in a constitutionally deficient conviction, so he was prejudiced by any arguable procedural default of this meritorious claim.

### 1. Deficient Performance Under *Strickland*

The state courts overwhelmingly found trial counsel's performance in Kustok's criminal proceedings to be deficient under *Strickland*. R.2-2 at 90 (the trial court holding, "The defense was on notice that the potential evidence existed…more than a year and a half prior to trial….[T]he defense chose not to do anything about it. They had the ability and opportunity to inquire further and to request that the pillow case be tested, but they did not."); R.2-6 at 13 (quoting criminal trial court at the motion for new trial, "the evidence could have been discovered prior to trial with the exercise of due diligence"); *id.* (quoting appellate court in *Kustok*, 2016 IL App (1st) 143812-U, "this evidence could have been discovered by defendant prior to the trial through the exercise of due diligence"); *but see id.* at 15-16 (post-conviction circuit court holding that counsel's performance was not deficient because this was a complicated case and there were numerous other things that counsel did well).

Citing out of Circuit authority, Respondent argues that the latest-in-time adjudication—the *dicta* from the post-conviction court—should trump the actual, real-time adjudication of performance by the criminal trial court and the performance adjudication by the higher appellate court reviewing the trial court's adjudication. Doc.19 at 33-34. Both of those courts found counsel's representation to be deficient and held that Kustok's complaint relating to the barring of the SR testing results at trial should have been framed as an ineffective assistance of counsel claim. R.2-2 at 90; R.2-6 at 13. Respondent also argues that because of the post-conviction court's ruling, there is a "doubly" challenging standard that should be imposed in considering whether *Strickland* requirement have been met. Doc.19 at 33.

But what Respondent misses is that the post-conviction court's ruling was *dicta* because the court found the claim was procedurally forfeited. *See* Doc.2-6 at 8 ("Although the Court

believes Petitioner has forfeited his claims by not raising them on direct appeal, the Court will address Petitioner's claim of ineffective assistance of trial counsel."). As such, it should be afforded less weight than the court decisions addressing the issue directly. *See, e.g, United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) ("a later court, even if it is an inferior court, is free to reject" *dicta*); *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 524 F. Supp. 2d 1031, 1041 (N.D. Ill. 2007) ("Dicta in these discussions therefore carries little weight when compared with the opinion of courts and authorities that have directly addressed this question"); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 738 (2007) (*dicta* not entitled to full weight). Accordingly, the ruling from the state courts that this Court should defer to are the last court rulings that considered counsel's performance squarely, not as *dicta*, and those courts found counsel's performance to be deficient.

Consistent with the state courts, the district court likewise found that counsel's failure to order the SR testing was deficient performance. As the district court recognized, the scientific testing was central to disputing the state's reconstruction of the scene and to impeaching the credibility of the state's key expert, Englert, and his crucial testimony for the prosecution. A.19 ("The significance of the SR Test results therefore involves not simply 'the presence or lack of lead on the pillowcase,' *Kustok*, 2021 IL App 191899-U, ¶ 55, but also the prosecution expert's knowing refusal to use what he conceded was the appropriate test."); *id*. ("Although the jury learned on cross-examination of Englert's failure to follow proper testing procedures, without the test results it could not have known that this flawed approach led to Englert being wrong on this material factual issue"); *id.* at 20 ("test results would have established that Englert's reconstruction was inconsistent with the physical evidence, while also corroborating defense expert Kish's testimony"). Essentially, the criminal trial was a battle of the experts, with a verdict

hinging on which expert the jury believed, and the omitted testing would have fatally undermined the prosecution's expert.

Thus, Respondent's arguments about all that defense counsel did successfully do at trial merely underscore the importance of counsel's lapse. As the courts found, Englert's testimony repeatedly relied on the supposed absence of soot on the pillowcase to rule out the possibility that the shooting was self-inflicted or accidental. A.6-7, 18. Respondent is correct that defense counsel attempted to impeach the prosecution's expert Englert and presented experts to counter him. But with Englert's testimony unimpeached by the SR testing that disproved his erroneous theory, the jury chose to credit him over the defense's evidence that the decedent accidentally shot herself. A.1-3, 9, 19-20. A finding of deficient performance is warranted where there was simply no reason for counsel not to procure and present the SR testing that would have debunked Englert's testimony and revealed that his lack of scientific training undermined his opinion. *See, e.g.*, *Washington v. Smith*, 219 F.3d 620, 631-32 (7th Cir. 2000) (counsel's failure to subpoena a witness "until the eleventh hour and his failure to try to ascertain what exculpatory evidence 'new' witnesses might have were flagrant examples of ineffective assistance."); *Dunn v. Neal*, 44 F.4th 696, 709-10 (7th Cir. 2022) (affirming the grant of *habeas* relief based on ineffective assistance of counsel where defense counsel failed to present conflicting expert testimony to rebut the prosecution's theory of the case).

The state and district court findings that counsel performed deficiently were correct.

### 2. Counsel's Lapse Was Prejudicial under *Strickland*

As the district court found, the omitted SR testing would not only have disproved the state's reconstruction of the scene, it also would have undermined the credibility of the state's hired reconstruction expert and bolstered the credibility of the defense's reconstruction experts in

a case that came down to a battle between the experts who grappled with the central question of the case: was the shooting intentional, accidental, or self-inflicted? A.19-20. Yet, "[w]hen asked if the shooting could have been accidental," prosecution expert Englert "cited the absence of soot on the pillows in ruling out that possibility." A.6.

This was the crux of the prosecution's case, and it was based on both Englert's erroneous assumption that the soot on the pillowcase was instead blood and on Englert's shoddy methodology, not even bothering to confirm his key assumption with the quick and simple confirmatory test. The other expert to opine for the prosecution, forensic pathologist Dr. McElligott, was not a ballistics expert and "didn't really consider accident[] for too long." A.5-6. Defense expert Paul Kish debunked Englert's analysis, but without the concrete proof that Englert mistook soot for blood and premised his opinion on that error, Kish's testimony lacked sufficient punch. A.7-9. Defense ballistics expert Matthew Noedel testified to explain how the shooting could have been accidental, but again, an unimpeached Englert carried the day in ruling out accidental shooting, expressly relying on his erroneous conclusion that there was no soot on the pillowcase. A.6, 9.

Should this Court find procedural default, defense counsel's failure to procure SR testing that would have exposed the flaw in Englert's testimony and methodology demonstrates prejudice sufficient to overcome any procedural barrier and to warrant consideration of this claim. The remaining evidence in this case was only circumstantial and would have looked very different with Englert's conclusive expert testimony debunked.

For instance, Respondent argues that Kustok had a motive to commit a brutal, close-range murder because he was a person who had affairs. Doc.19 at 26. About 25% of all married men cheat on their wives, but this does not make them ruthless murderers. *See, e.g., Franklin v.*

*Warden, Mule Creek State Prison*, 2:05-CV-0304 KJM, 2014 WL 7433752, at *95 (E.D. Cal.

Dec. 31, 2014), *aff'd sub nom. Franklin v. Kernan*, 646 F. App'x 553 (9th Cir. 2016) ("Dr. Davis

testified that 24 to 26 percent of men are unfaithful at least once during marriage, and that every

year, four out of a million husbands murder their wives; using these numbers a prediction that an

unfaithful husband would murder his wife would be wrong 65,000 times.") (record citations

omitted); Mark, K.P., Janssen, E. & Milhausen, R.R. "Infidelity in Heterosexual Couples:

Demographic, Interpersonal, and Personality-Related Predictors of Extradyadic Sex." *Arch Sex

Behav* 40, 971-8282 (2011) (studying 506 men, median age 32.86 years, and finding 23.2% had

engaged in sexual interactions with someone other than their partner during their current

relationship). While Kustok's infidelity is regrettable, it is not proof he murdered his wife.

Nor is it significant that the decedent did not tell people she kept a gun in her bedroom.

Doc.19 at 26. Gun ownership is a highly personal and private decision that many people choose

not to share. *See, e.g., Mager v. State, Dept. of State Police*, 460 Mich. 134, 143-44, 595 N.W.2d

142, 147 (1999) ("A citizen's decision to purchase and maintain firearms is a personal decision

of considerable importance. We have no doubt that gun ownership is an intimate or, for some

persons, potentially embarrassing detail of one's personal life.").

Respondent also points to Kustok's atypical response to his wife's death. Doc.19 at 27. It

is hard to know what the typical or expected response to a spouse accidentally shooting herself in

the face in bed would be, but choosing to spend ninety minutes with an already deceased spouse

before taking her body to the hospital is not proof of murder. And discharging the remaining

bullets into a nearby armoire so as to not be tempted to shoot himself may sound like an

unexpected reaction, but tragedy affects different people differently, and perhaps it is precisely

because Kustok was unfaithful to his wife that he felt so guilty about what appeared to him to be a suicide.

In an effort to diminish the significance of counsel's lapse, Respondent makes the bold claim (without citation to the record, no less) that the belated proof of soot on the pillowcase does not "undermine the conclusion that the forensic evidence was uniformly consistent with petitioner shooting Anita and inconsistent with Anita shooting herself." Doc.19 at 26. Presumably, Respondent is relying on Englert's testimony to support this bald assertion, but as argued above, Englert's testimony would be wholly undermined by proof that he failed to conduct the most basic and necessary test required, to distinguish between blood and soot. *See* A.20 (district court explaining how the new evidence proved "that (1) the prosecution's blood spatter and crime reconstruction expert could not accurately determine whether something is soot or 'obviously clotted blood'; (2) this was a direct result of his deliberate choice not to administer a definitive test that he knew was appropriate; and (3) this error called into question the accuracy of his entire crime scene reconstruction.").

Similarly, Respondent argues that the district court and Kustok erroneously conflate soot marks with burn marks, but this misses the mark on two levels. Doc.19 at 40-41. First, the fact that Englert could not tell the difference between blood and soot and that he could not be bothered to perform the simple test that would have distinguished the two, in and of itself refutes Englert's care and accuracy as an expert. Hearing of Englert's careless mistake—repeated at least fifteen times during the course of his testimony (A.7)—a jury would likely choose to give greater weight to the scientific opinions of the defense experts who disputed Englert's conclusions. And secondly, Englert's testimony expressly relied on the absence of soot in ruling out the possibility of an accidental shooting. Englert explained that fire comes out of a gun barrel causing a burn

mark, as does a black cloud of dust referred to as soot. Doc.2-2 at 223-24. According to Englert, the soot would only appear on the side of the pillowcase where a shot was fired. *Id.* at 224. There was a bullet hole in the pillow that Englert examined, but he incorrectly denied the presence of soot on the pillowcase, which would have supported the possibility that the shot was fired while the gun laid on or near the pillow, and therefore could have been an accidental discharge (for instance, the gun might have been lying nearby on another pillow and accidentally discharged into the decedent's face, explaining why the shot was from about three inches away, the angle of the shot, and the reason why the decedent did not have gunshot residue on her hand, *etc.*). *E.g., Id.* at 225.[2]

Respondent contends that Kustok's defense that the decedent's death was possibly a suicide or accident is refuted by the evidence, but the evidence on this point is virtually nonexistent without Englert's testimony. Doc.19 at 27-29. Forensics pathologist McElligott admitted that she did not really consider the possibility of an accidental shooting, and in any case, she was not a ballistics expert. A.5-6. Defense expert Kish could not rule out an accidental shooting, testifying that any reconstruction was inconclusive. A.7. And defense expert Noedel testified that it was not uncommon for the gun in question to unintentionally discharge. A.9. Without Englert's testimony, a jury could easily conclude that the decedent accidentally shot herself.

Finally, Respondent erroneously maintains that the key omitted evidence is merely cumulative. A.39. This is simply wrong. As the district court explained, "Although the jury learned on cross-examination of Englert's failure to follow proper testing procedures, without the

---

[2] Post-conviction expert Nicole Fundell did not testify at trial and thus is not part of the equation of whether the results at trial would likely have been different. In any case, Fundell confirmed that the stain at issue was indeed soot, not blood.

test results it could not have known that this flawed approach led to Englert being wrong on this material factual issue." A.19. Moreover, the confirmatory SR test results "would have established that Englert's reconstruction was inconsistent with the physical evidence, while also corroborating defense expert Kish's testimony at trial that he did not believe the stain was blood." A.20. Thus, the test results would have served multiple roles: undermining Englert's conclusions, "call[ing] into question the accuracy of his entire crime scene reconstruction" and "undercutting both Englert's overall methodology and his conclusion regarding the soot stain," while also supporting the defense expert's conclusions. A.20. As the district court found, such evidence is not cumulative.

Respondent's effort to distinguish *Dunn v. Neal*, 44 F.4th 696 (7th Cir. 2022), is unavailing. Doc.19 at 41. In *Dunn*, the prosecution argued that "the testimony of the eyewitnesses was not believable and that the jury should believe the scientific evidence." 44 F.4th at 709. This Court found that, had the omitted but necessary expert testimony been available, "there is certainly a reasonable probability that the jury would have some doubt" as to the state's reconstruction of the crime. *Id.* at 709-10. The same conclusion is warranted here. *See also Dunn v. Jess*, 981 F.3d 582, 596 (7th Cir. 2020) (finding sufficient prejudice where defense expert would have rebutted "some of the medical examiner's testimony" and "undermined the state's theory of the case in other ways.").

In opposition, Respondent argues that, had Englert actually performed the definitive test and found the error of his reconstruction, he would have acknowledged that the stain was soot instead of blood, but that would not have changed his ultimate analysis. Doc.19 at 41-42. This ignores that the SR testing reveals Englert's shoddy analysis—this Court cannot just assume Englert would have corrected his deficient analysis and still reached the same conclusions. And it

disingenuously suggests that Englert would indeed have reached the same conclusion, despite the fact that his opinion ruling out the possibility of an accident expressly relied on the absence of soot. Respondent also tries to distinguish the spot-on analysis of *Dunn v. Neal* by arguing that there was "ample additional evidence of petitioner's guilt." *Id.* at 42. But as argued above, the remaining evidence is 100% circumstantial inference, far less powerful without the prosecution's expert opining that the physical evidence proves the shooting could not have been an accident.

The absence of SR testing in this case prevented the defense from impeaching the prosecution's key expert. This error was prejudicial, sufficient to implicate the cause and prejudice test, should this Court find a procedural default. No court has yet conducted an evidentiary hearing on Kustok's ineffective assistance of counsel claim, so the appropriate remedy would be to remand this case to the district court for an evidentiary hearing. *See, e.g., McMullen v. Dalton*, 83 F.4th 634, 647-48 (7th Cir. 2023), *reh'g denied,* 20-3273, 2023 WL 7130872 (7th Cir. Oct. 30, 2023) (collecting cases).

## CONCLUSION

In between the Illinois courts' rulings in *Veach I* and *Veach II*, when Kustok was litigating his direct appeal, the courts employed a categorical approach that required Kustok to raise his ineffective assistance of trial counsel claim on post-conviction. The Illinois courts' forfeiture finding, after the law changed, is not an adequate state ground for refusing to consider his meritorious ineffective assistance claim. Alternatively, Kustok shows cause for any arguable lapse and prejudice from the state courts' refusal to consider his claim. Kustok respectfully asks this Court to reverse the dismissal of his *habeas* petition and remand to the district court for adjudication of the claim.

DATED:  November 20, 2023            RESPECTFULLY SUBMITTED,

/s/ Debra Loevy     
Attorney for Petitioner-Appellant

Karl Leonard, *Counsel of Record*
Debra Loevy
THE EXONERATION PROJECT
  at University of Chicago Law School
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900

*Attorneys for Petitioner-Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I, Debra Loevy, hereby certify that the foregoing document complies with the type-volume limitations of pursuant to Federal Rule of Appellate Procedure 37(a)(7)(B) and Circuit Rule 32(c) in that it contains 6,575 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In preparing this certificate, I relied on the word count feature of Microsoft Word.

This document complies with the typeface requirements of Circuit Rule 32(c) and Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced 12-point Times New Roman typeface using Microsoft Word.

s/ Debra Loevy
*Attorney for Petitioner-Appellant*

Karl Leonard, *Counsel of Record*
Debra Loevy
THE EXONERATION PROJECT
  at University of Chicago Law School
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900

*Attorneys for Petitioner-Appellant*

## CERTIFICATE OF SERVICE

I, Debra Loevy, hereby certify that I electronically filed the foregoing reply brief with the

Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that

the following counsel of record will be served electronically:

Garson Fischer
OFFICE OF THE ATTORNEY GENERAL
Criminal Appeals Division
12th Floor
100 W. Randolph Street
State of Illinois Center
Chicago, IL 60601-3218
Garson.fischer@ilag.gov

I further certify that, in compliance with this Court's forthcoming order, I will transmit to

the Clerk 15 copies of the brief and short appendix bound thereto, and 10 copies of the remainder

of the appendix.

Dated: November 20, 2023

/s/ Debra Loevy
*Attorney for Petitioner-Appellant*


Karl Leonard, *Counsel of Record*
Debra Loevy
THE EXONERATION PROJECT
  at University of Chicago Law School
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900

*Attorneys for Petitioner-Appellant*